And we will hear first from Mr. Wartman. Good morning. Good morning. Bradley Wartman and my colleague Peter Angelcovich on behalf of Hyatt Corporation. May it please the Court. Counsel. We're here today on an appeal for a judgment on the pleadings. There are two issues that we've defined in this case. Number one is kind of an important constitutional issue, Article III jurisdiction. The other being – I can't understand your argument on that because boiled down to its essence, it seems to me that your argument is because we say we're complying with the arbitral award, there's no controversy between us and our opponents. And usually one side's position doesn't determine whether there is a case or controversy. This case looked to me like an entirely ordinary situation in which somebody gets an arbitral award or two, as happens here, and they move ahead and go to court as both 301 and the Federal Arbitration Act permit to get that award confirmed. Very routine. Except for the process in which it was granted in this case. No, I don't think so. I mean, they show that there's a problem. Now how that problem gets solved is different. Obviously they're the 41 or whatever the number's up to, sub-arbitrations going on right now. But they show that they have a reason for thinking that the arbitration awards are not being complied with. And so they would like those awards confirmed, which is a step in the process for arbitration. You must know that. Certainly. And it is a step in the process as long as they can show that there is a controversy. Right. And they've shown it. You say there isn't, they say there is. That's already a controversy, actually. And they point to the 41 grievances to show there are actually concrete examples where we don't think this is being complied with, and those will then themselves go to arbitration. That's clear, I gather. That's already happening. That seems all easy to me. It is happening. But in this particular context, what we have is a situation where, from a collateral standpoint, they've raised 41 allegations that we deny. That's fine. You're free to deny them. I mean, is there really any real question that Hyatt and the union have an ongoing dispute about the parameters of Section 56 and the use of managers? Please repeat what you just said, Judge Rovner, because it got a little choppy. Oh, gosh. I'm at a loss to understand why you do not think there's a real question, that you and the union have an ongoing dispute about the parameters of Section 56. And the use of managers to perform bargaining unit work. I'm just at a loss. If we combine it in a grand scheme of things, there is an ongoing dispute with regard to Section 56. That is, in fact, being decided by the arbitrator on the 41 other claims. But there's also part of that dispute got submitted to Arbitrator Fleishley and Arbitrator Kennes in the earlier ones. And to nail that down, to get those arbitral awards confirmed, is a very normal step if there is still a dispute between the parties, as there clearly is. If those decisions had been pollucively clear, then presumably we wouldn't have these other 41 cases. But in terms of a motion for judgment on the pleadings, what we're suggesting is when you're strictly narrowing this down to what the union has claimed, in their prayer for relief, all they ask for is for a confirmation of the two awards. Exactly, because they are respecting the arbitration agreement. Another thing that flabbergasts me about your position is you seem to be saying, because this particular collective bargaining agreement preserved the right to strike for the union, you would like strikes all the time. You don't want people to use the arbitration procedure, and you don't want them to use confirmation, because Hyatt, for mysterious reasons, thinks that it's better off with strikes. And it seems to me that's a very strange position for an employer to take, if that's your position. And really, as I look at this CBA, it's just that there are a couple of options for the union, and they have chosen to try to work through the arbitration procedure. It's certainly not our position that we would encourage a strike, and I didn't mean to certainly portray that issue in that light. What we're saying in that regard is that there are remedies within the contract that they've negotiated for themselves. Correct, like a strike. And you would rather they use that than simply work their way to the end of the line with the arbitration procedure, and the end of the line is confirmation of award. We certainly do not encourage a strike. We're hopeful that we'll have a harmonious relationship with our workers. But in terms of the context of this case, we do suggest that if you simply name out 41 other allegations without proving those allegations to support your case in controversy, the Lujan case, as we demonstrated with the Supreme Court, says that you have to prove those allegations. No, it doesn't. There is no case that says you have to prove allegations before you can sustain standing. You have to show that you have made good-faith allegations, and we've been very careful, as has the Supreme Court, to draw a distinction between the good-faith allegation that supports standing and the ultimate winner of the case, which is the merits. I mean, otherwise, all cases would be up in the air about standing until a jury came back or a court ruled, if it was a case for the court, and that's simply not the law. I think in this particular case, on a motion for judgment on the pleadings, when we've denied those allegations, what are you left with other than the fact? We know that you're contesting, as Judge Rovner said. We know that you think, and you seem to be saying, you think they should improperly have asked the court to resolve the 41 cases, and you would have come back right away at that point with a motion saying, no, no, no, those 41 cases are for the arbitrator, which is precisely what the union is doing. They're doing what you would have urged them to do. Correct. But I don't suggest to the court that there should be simply a summarily granted motion when you don't have a violation of these two particular orders. That's contested. That's correct. But you are violating them. That is correct, and our position with regard to that is the impact that it has on those future arbitrations, not just simply the judgment on the pleadings issue that we have, but what kind of impact does it have on the future? That's for the arbitrators in the later proceedings, and what you can get from confirmation is a final resolution of the disputes that were submitted to the arbitrators, the ones that they decided, the Bellman dispute and the dispute about the convention services department that went before the two arbitrators, and as you yourself have pointed out, if it's confirmed, judicial contempt proceedings are also possible, which puts a little more muscle behind it. But the later arbitrators will decide essentially the collateral estoppel or claim preclusive effect of the earlier awards. Certainly, that's the case law in there. But as the Derwin Court pointed out, we rely heavily on that case. Sometimes when the court puts its stamp of approval on a case like this, it has a tremendous influence down the road with regard to the arbitrators that the employer is in fact violating it. Don't you think that actually also underscores the fact that this is a real dispute? You don't want the arbitrator's award to be confirmed. They do want the arbitrator's award to be confirmed. That looks to me like a dispute, a real concrete dispute between you. The court is empowered to do something about it. It's redressable. The court will either confirm or not confirm. What's not to like about the standing? Well, from the standpoint of our position, just as we said with the motion for judgment on the pleadings, how is a union ever going to be able to sustain these allegations when they're pending before the arbitrator if they're disputed allegations on a judgment on a pleading? But you don't think that 41, Section 56 is before us? I'm sorry? It's not before us. It is before you because they raised it in a pleading, but I don't know if it should be considered on the way that it was brought from a judgment standpoint. No, but you agreed that the merits of those disputes are not before us at all. They're being addressed in the various arbitrations. We're not going to say a word about them. No one's asked us to. Well, they have said a word because they've raised them in this case. To show that there is still a dispute, a live dispute about the scope of Article 56. Correct, and that's where our contention is, is whether or not they could rely on those allegations for purposes of confirming a judgment in this particular instance. Again, Your Honor, we point to the Derwin case as being an example of the court's reluctance in the First Circuit, at least, and some of the underlying cases that we cited to in the district court level has shown a propensity to follow that approach, too. If the court is not inclined to grant the reversal on the basis of Article III jurisdiction, then we do have an issue on whether or not an award of this nature should be confirmed. The breadth of the awards themselves is the equivalent of what we refer to as a regulatory injunction. Stop following the law. We have managers that are going to have to comply with this type of federal court, effectively a federal court judgment, and we have some real issues with regards to the practical side of actually deciding that. And as we asked in our brief, we asked if that would be remanded with clarification on the scope of the Section 56 proceeding. Thank you. Okay, you can save your rebuttal time. That would be fine. Mr. Barber. Good morning, Your Honors. I would like you to address two things, Mr. Barber. One is probably just a factual question about the status of these 41 or whatever the number has moved to. These are, in fact, being on their individual merits being submitted to arbitrators? Yes, Your Honor. Okay. And at some point they will be resolved. And the other point I would like you to talk about is the last point that Mr. Wartman made, which is the cease and desist order, which I guess was in Arbitrator Keenis's award but not the other one. Am I remembering correctly? They were in both arbitrators, actually. Arbitrator Fleischle's award only ordered to cease and desist. It did not award monetary damages. Oh, right. All right. So is there any vagueness issue with respect to that? We believe there's not, Your Honor. If I could actually go back to your first point, there's actually in the record in the separate appendix, particularly the affidavit of Zachary King that the hotel filed, we see that the parties are arbitrating these 41 specific allegations. There's also, I believe, page 128 of the separate appendix, a demand from the union to arbitrate subsequent violations that occurred after the complaint in this case was filed. And so there's ample evidence that not only are there ongoing allegations of violations but that the parties are arbitrating them. So the issue of the cease and desist orders and whether they are too vague, both awards are about 50 pages long, and they go through really careful sifting of the allegations that were made, the evidence before the arbitrators, as well as the contract language. And the contract language is fairly brief. It says that managers shouldn't perform work that's normally performed by  And so one of the difficulties was what does an emergency mean? And both arbitrators agreed on that. They came up with it. They discussed it. All right. So Arbitrator Fleshley goes through some dictionary definitions, other examination. He defines it, and Arbitrator Keenan says yes. I think that's – she goes through it actually for a while, too. But then she says yes, I think. And there was a little bit of definition of what normal means, too, wasn't there? I think so, yes, Your Honor. So I don't believe that any possible alleged violation that may occur, that the union violates Section 56 of the CBA, is also going to be a violation of these arbitration awards because I don't believe that the arbitration awards cover every contingency that may arise in the running of this hotel. But the arbitration awards, certainly by adjudicating numerous examples of typical violations that occur, really clarify the boundaries of quite a bit of what the arbitrators intended. And so I do think that the awards are clear enough that Hyatt can comply with them. So are you arguing essentially – What is your position on Hyatt's request for remand to clarify that the union must arbitrate any additional grievances first before seeking contempt sanctions? Your Honor, I don't believe that that is a – really an issue that's before the court. I don't think there's – that issue is not right. The union hasn't sought to bypass the arbitration process in any way. So I don't think that's an appropriate order for this court to enter. Yeah, go ahead. I'm sorry, was there a – I was thinking of something, but actually I had forgotten what I was thinking of. Well, I should just – Oh, I know what I was thinking of. So you have in these two arbitral awards some discussion and elaboration of what the term emergency means. And, you know, at one level, every arbitration award, I suppose, adds to kind of the industrial workplace, you know, the understanding in the workplace of what the deal is between the parties. On the other hand, of course, the true res judicata effect of the earlier arbitration awards is going to be now for these later arbitrators to determine. So I'm interested in your position on what, if these awards are confirmed, what these definitions of emergency and perhaps normal, if that's defined too, are going to mean for this workplace. Your Honor, certainly the res judicata effect of these awards is for future arbitrators to determine. This court has made clear, and I think it's quite clear from the law of Section 301, that an order of confirmation doesn't really increase the persuasive effect of an arbitration award. It's not saying that we, the court, would have found exactly the same way if we had faced the merits of this decision. No, actually, quite to the contrary. That would be against all sorts of arbitration law. Right, right. We're saying you're somehow in the zone. You interpreted the contract. That's right. You derived your arbitral award from the essence of the contract, whatever the phrase is. That's right. And so the res judicata effect of these two awards in future arbitrations is up to those arbitrators to decide, and that's simply the law. Where this may become a question, and this is just purely speculative, not on any facts that are before us, and I don't believe this has happened yet, but if the union had to seek contempt in court, it would have to make, I believe, quite a high showing that the subsequent violations were really substantially similar to the violations that are found in the two awards that were confirmed here. And so it is, again, not every future violation is going to be a violation that could go to court or that would violate this order of confirmation, although it may violate the contract depending on what the arbitrators find. Well, Section 56 is pretty broad. It is, Your Honor. Yeah. So I can certainly imagine that although it may have been violated here, there are all sorts of applications that you wouldn't really know too much about. That's right, and those wouldn't be covered by, I mean, these arbitration awards running to a total of more than 100 pages. Right. No, we saw them. They're in the appendix. Yes, and they really delineate, I think, quite well what they cover, what those arbitrators considered and how they interpreted the contract. And those awards, they don't go beyond what's written there. So cease and desist is not an uncommon part of an arbitration award in this field, is it? Your Honor, it's not uncommon. More often when I've seen requests to confirm awards, it's because there's a monetary judgment and the winning party wants to reduce that to an enforceable judgment to collect the money. But cease and desist awards are certainly appropriate. This court in Honeywell actually specifically approved of them, and it cited quite a few authorities, including I think that case was in 1975, but there was even then this text, El Khoury and El Khoury on arbitration, which is a standard reference in the field. And that text approves quite a bit of arbitrators fashioning appropriate relief within the bounds of what's permitted them under the CBA to remedy even systematic or ongoing violations. If I could go back a little bit, you do dispute whether Hyatt violated 56 after the arbitration award was issued, and that's before an arbitrator right now, right? Yes, Your Honor. And we dispute that. We made those allegations in good faith in the complaint. Hyatt, in its answer, actually, although they denied those 41 specific allegations in the denial section of its answer on the basis that it hadn't yet investigated them, it also said in its answer the second affirmative defense in the answer was the dispute described in this lawsuit should be arbitrated. And so I don't think ñ and then Hyatt further moved that court, moved the district court to compel arbitration of those 41 specific allegations. They were already in arbitration, but there's not a real dispute even in Hyatt's filings with the court. So you don't think that issue is still pending and it's before us now? Those 41 allegations have never been before the court for resolution on the merits because they must be arbitrated under the collective bargaining agreement. So weren't you trying to avoid ñ I mean, you know, there are some cases that say if there's no reason to think there's a problem, then there's no controversy that counts for Article III purposes. So it was my understanding you mentioned these 41 additional instances to show that you weren't in that class of cases, that indeed it has not all been resolved between you and that there are still live disputes. Yes, Your Honor. The Derwin case in the First Circuit and then there are a couple of district court cases here that say if the union doesn't even plead that there are violations, the court's not going to waste its time confirming these awards. And so we have been up front from the beginning that we are pleading those violations to show that there is an ongoing dispute about the validity of the awards. Also that Hyatt termed one of the awards worthless. The union has reason to believe, good faith reason to believe, that Hyatt is not complying with these awards. And the awards themselves show that this was an ongoing problem of contract compliance. And so with all of that, that's why those specific allegations are in the complaint, not for resolution by the court. Was the back pay paid? I believe it was, Your Honor. If there's nothing further. I think not, so thank you very much. Thank you. Anything further, Mr. Bortman? I think it's important to actually understand what the award actually says. The Fleishley Award awards no monetary amount, but it states, the hotel is hereby directed to cease and desist from violating Section 56 and take all reasonable steps necessary to ensure its managers hereafter comply with its terms. The Kennis Award, Arbitrator Kennis. Monetary award was entered along with the command, the hotel is ordered to cease and desist from violating Section 56 of the 2013-2018 CBA. There are some real issues with regard to that order and how we implement it in a way that it's not going to be a continuing battle for here until the end of time. There is a vagueness issue with regard to this, and I know counsel suggested that the violations would have to take on the form of the types of violations that were decided by both Arbitrator Kennis and Arbitrator Fleishley, but that's not what the award says. The award is that broad. It says follow the contract, which really puts us in a situation of how does a manager, when you've got, I think we identified 100 and some managers that are at the hotel, 800 employees, there's going to be issues with regard to what is bargaining unit work, real issues that are decided by the arbitrator, as you can see in the 50-plus opinions and just two arbitration awards. The vagueness issue is a real concern for us, and it's an issue that if it's put in the form of a federal court order, now you have a situation where could it be a Rule 65 injunction for that matter? Are we going to have managers that are going to be called before the trial court who are facing contempt of court proceedings as a result of this? So there are some legitimate concerns that were pointed out in the brief and we think should be addressed with at least some clarification on just what is meant. So I've never seen, though, an arbitrator's award equated to a Rule 65 injunction. If it's a Rule 65 injunction, there are various requirements for it, of course, but an arbitrator isn't a court. That's the whole point, actually. And I don't equivocate it as a Rule 65 injunction, but then the question becomes. So you would agree that they're different and probably different standards. I would agree with that, but I'm just saying from the standpoint Rule 65 says not only is it applicable to the party but those that are in concert with it. It's important to understand, too, I think, the concession that was made by the union after the injudgment was entered. They conceded that every arbitration or every grievance that would be filed now or in the future, they would not go to the court for contempt of court. They would go to arbitration. Well, I mean, you make a lot of that language. I mean, I think they were saying, of course, if there's a particular dispute, arbitration is the way to go. I mean, you're trying to manufacture a dispute where you are apparently in complete agreement that these 41 disputes are proper for arbitration. They're being arbitrated. So the circumstances in which contempt would be found, it seems to me, would be quite narrow. Not a new dispute. It would have to somehow deal with the old dispute. Actually, I think the concession that was made before the trial court following the judgment was everything would go before the arbitrator. Depends how you read it. But anyway, it's there in the record. We will obviously take it into account. And I will notice that I don't think cease and desist is quite a common award. In this particular case, I noted in the collective bargaining agreement, cease and desist language is actually contained as a form of relief in Section 6 of the collective bargaining. It's not contained in Section 56. I'm not saying it's prohibited, but it's noteworthy from the standpoint that they provided for the remedy in Section 6, but didn't provide for it when they negotiated the contract in 56. What does Section 6 cover? It's subcontracting. Oh, okay. Unless there's other questions, that's all I have. Apparently not, so thank you very much. Thank you, Judge. To both counsel, we'll take the case under advisement.